IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SNK AMERICA, INC. | ) | FILED: SEPTEMBER 3, 2008 |
| | ) | 08CV5002 |
| Plaintiff, | ) | JUDGE KENDALL |
| | ) | MAGISTRATE JUDGE COLE |
| v. | ) Case No. | |
| | ) | PH |
| J.L. MANUFACTURING, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff SNK America, Inc. ("SNK"), by and through its attorneys, for its Complaint against Defendant J.L. Manufacturing, Inc. ("J.L."), states as follows:

### Parties

1. SNK is an Illinois corporation that supplies a wide range of metal cutting machinery to companies throughout the country.

2. J.L. is a Washington corporation that transacts business in Illinois and uses metal cutting machinery as part of its operations.

### Jurisdiction and Venue

3. This Court has jurisdiction because diversity exists between the parties under 28 U.S.C. § 1332. SNK is incorporated in Illinois and has its principal place of business in Illinois. J.L. is incorporated in Washington and has its principal place of business in Washington. The amount in controversy exceeds $75,000.

4. Venue is proper in the Northern District of Illinois because J.L. transacts business in Illinois and is subject to personal jurisdiction in the Northern District of Illinois under 28 U.S.C. § 1391.

## **COUNT I – BREACH OF CONTRACT**

5. SNK repeats and realleges paragraphs 1 through 4 above as if fully set forth herein.

6. SNK and J.L. entered into a valid and enforceable contract for equipment and services ("Contract"). Exhibit A hereto, Contract. Specifically, J.L. agreed to purchase from SNK a metal cutting machine (the "Machine").

7. Article X of the Contract provides that the "[m]achine will be installed and tested per the Seller's installation and testing standards and Buyer agrees to same. Upon completion of installation and testing, the machine shall be deemed accepted by Buyer, or upon Buyer's use of the equipment for production, whichever comes first. Upon acceptance, warranty period shall begin." Exhibit A hereto, Contract, p. 4.

8. In or about March 2008, in compliance with the Contract, SNK delivered the Machine to J.L. The Machine was installed and tested and SNK provided training to J.L. employees.

9. After installation, testing and training had been completed, J.L. began using the Machine for production. J.L. has continued to use the Machine for production for over three (3) months.

10. J.L. has accepted the Machine.

11. Article V of the Contract provides that "[p]ayment terms are, unless otherwise set forth in the quotations, ten percent (10%) down with the order and the balance due net cash thirty (30) days from the date of acceptance. Invoices past due are subject to one and one-half percent (1 ½ %) per month service charge. Buyer shall refrain from making any unauthorized deductions from payments to Seller." Exhibit A hereto, Contract, p. 3.

12. Over thirty (30) days have elapsed since J.L. accepted the Machine.

13. The Contract price for the Machine is $650,000.

14. SNK has demanded payment, but J.L. has failed and refused to pay for the Machine.

15. J.L.'s failure to pay for the Machine is a breach of the Contact.

16. J.L.'s breach of the Contract has proximately caused monetary damage to SNK in the amount of $650,000, plus interest.

17. SNK performed all of its obligations under the Contract.

WHEREFORE, Plaintiff SNK respectfully prays that this Honorable Court enter judgment against Defendant J.L., award damages to SNK in the amount of $650,000, plus interest and service charges, and enter whatever further relief this Court deems just and appropriate.

Dated: September 3, 2008

Respectfully submitted,

SNK AMERICA, INC.

By:     s/Brian P. O'Meara
      One of Its Attorneys

Brian P. O'Meara
McGuireWoods LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
Telephone: 312.849.8100
Facsimile: 312.920.6132
bomeara@mcguirewoods.com

```
08CV5002
JUDGE KENDALL
MAGISTRATE JUDGE COLE

PH
```

# EXHIBIT A

# SNK AMERICA, INC.

1800 Howard Street
Elk Grove Village, IL 60007

Telephone: (847) 364-0801
Facsimile: (847) 364-4363

## SALES CONTRACT

| | | |
|---|---|---|
| **DATE:** September 10, 2006 | **PURCHASE ORDER NUMBER:** | **DATE OF PURCHASE ORDER:** September 10, 2006 |
| **PURCHASER:** JL Manufacturing Inc, 12310 Highway 99 S., #114 Everett, WA. 98240 | | **PLACE OF DELIVERY:** FOB: Point of Entry |
| **QUANTITY:** One | **MACHINE MODEL:** FSP-80V | **TOTAL PRICE:** $650,000.00 plus tax, if any. |
| **TERMS OF PAYMENT:** 10% down, ($10,000 with order, balance of down payment due 30 days prior to shipment). Balance due net 30 days after installation. | | **SHIPPING INSTRUCTIONS:** SHIP TO: JL Manufacturing: Buyer's expense. |
| | | **DELIVERY DATE:** Approx 10 months from receipt of order |

**SPECIFICATIONS:** As per SNK brochure #0806200F

THIS SALES CONTRACT IS SUBJECT TO THE TERMS AND CONDITIONS PRINTED ON THE REVERSE. This document supplements and supersedes any previous terms and conditions. This Sales Contract must be signed by Purchaser in the name of the firm or corporation by an officer of the corporation authorized to act on behalf of and to make binding contractual commitments for the firm or corporation. Please complete and return this form at once regardless of any other form used.

SNK AMERICA, INC. (USA)

By: _Yoshiro Yamashita_
       EVP

DATE: Oct. 3, 06

ACCEPTED: The Sales Contract including the attachments is accepted.

COMPANY: JL Manufacturing Inc
NAME: Jeff Lavelle
SIGNATURE: _Jeff Lavelle_
TITLE: President
DATE: 9-28-06

SNK AMERICA, INC.
Page 1 of 4

# SNK AMERICA, INC.

## TERMS AND CONDITIONS

January, 19 2004

### ARTICLE I
### UNDERSTANDING

Unless otherwise stated by Seller, this proposal and any resulting contract for equipment and services will be subject to the following terms and conditions:

Orders submitted in response to this quotation are subject to the following terms and conditions and no agreement or other understanding in any way modifying these terms and conditions, whether contained in Buyer's purchase order or otherwise, shall be binding upon SNK AMERICA, INC. (USA), unless reduced to writing signed by an authorized officer of the Seller; and the Seller hereby gives notice of objection to any terms set forth in any other writing which are in addition to or different from the terms set forth in this quotation. Orders submitted pursuant to this quotation shall not be binding upon the Seller until accepted by the Seller at its office.

### ARTICLE II
### PRICES

Prices are for acceptance within the period of thirty (30) calendar days from the date issued and are subject to change without prior notice at any time prior to the acceptance of your order. All prices are F.O.B. Port of Entry, duty paid or stocking point in U.S.A. Prices exclude sales, use, excise or other taxes and Buyer shall pay all taxes for which it is responsible, regardless of whether such taxes are added by Seller to its invoices to Buyer or invoiced later. Any down payment made by the Buyer in connection with the order is nonrefundable in any event or for any reason.

### ARTICLE III
### DELIVERY

Any proposed shipment date is an estimate and not a guaranty of a particular delivery date. Buyer is responsible for transportation and any damages, which may have been caused after equipment has left F.O.B. point. Buyer is also responsible for unpacking and erection of equipment after delivery. Supervisory services, however, are available from Seller to help Buyer erect equipment. All necessary measuring and testing instruments and equipment, test work-pieces, tools, and fixtures for an equipment acceptance run-off shall be furnished by Buyer.

### ARTICLE IV
### ACCEPTANCE AND CANCELLATION

Any offer to purchase shall not constitute an order until accepted in writing by Seller's officer at its head office. Accepted orders may not be cancelled unless agreed to in writing by Seller. In any case where cancellation by Seller is accepted such cancellation will be subject to payment of all costs and expenses plus cancellation charges as determined under the following schedule:

- Cancellation of Standard Machines less than sixty (60) days before scheduled shipping date, will be subject to a charge payable by Buyer of ten percent (10%) of the Gross Sales Price.

- Cancellation of Standard Accessories and Parts ordered separately from a machine less than sixty (60) days before scheduled shipping date, will be subject to a charge payable by Buyer of fifteen percent (15%) of Gross Sale Price.

- Cancellation of Special Machines, Accessories and Parts will be subject to a charge payable by Buyer as outlined in the Cancellation Schedule.

### ARTICLE V
### PAYMENT

Payment terms are, unless otherwise set forth in the quotations, ten percent (10%) down with the order and the balance due net cash thirty (30) days from the date of acceptance. Invoices past due are subject to one and one-half percent (1 ½ %) per month service charge. Buyer shall refrain from making any unauthorized deductions from payments to Seller.

### ARTICLE VI
### FORCE MAJEURE

Seller does not assume responsibility for delays in shipment caused by fires, labor disputes, delays and interruptions in and failure of sources of materials, supplies, equipment and labor, war, actions of Government authority, acts of God, unavailability of transportation facilities, or other circumstances not reasonably within Seller's control. Buyer's acceptance of delivery of the equipment shall constitute a waiver of any default due to delivery in shipment.

### ARTICLE VII
### TITLE AND LIEN RIGHTS

Upon title transferring to Buyer, Buyer herein grants to Seller to secure payment, upon machine acceptance, a purchase money security interest on the equipment covered as mutually agreed upon in writing by the parties, and Buyer agrees to execute all documents required by Seller to perfect said purchase money security interests.

### ARTICLE VIII
### OSHA AND ELECTRIC CODES

The equipment covered does not necessarily comply with codes or standards unless specifically quoted, ordered and so accepted. When compliance with OSHA is provided, it is based on Seller's understanding of the construction standards in effect at the time of acceptance only. Complete compliance with OSHA, and particularly regarding point of operation guarding is the responsibility of the Buyer and User and not Seller.

### ARTICLE IX
### WARRANTY AND LIMIT OF LIABILITY

The equipment covered is warranted to conform and perform to the specifications submitted Buyer with the quotations, amended as required through mutual agreement and constituting part of the contract. Seller makes no representations as to the year of manufacture of the subject equipment. The equipment is warranted to be free from defects in materials and workmanship under normal and proper usage of eight-hour-per-day five-day-week operation when owned by the original purchaser. Seller's sole obligation under this warranty is limited to replacing parts which Seller may determine to be defective and in the period of the shorter of either one year from date of acceptance of the equipment at Buyer's site or eighteen months after shipment from Japanese port. Additionally, Seller shall not be liable or responsible for any repairs, additions, or modifications made upon a product without prior written consent of the Seller. Acceptance of the equipment shall constitute waiver of all claims for damages caused b delay in shipment or damages to the equipment. Any use of the equipment for any purpose whatsoever by Buyer subsequent to the machine's installation shall be conclusive evidence of acceptance. IT IS UNDERSTOOD THAT THE FOREGOING WARRANTY IS IN LIEU OF ALL OTHER EXPRESS WARRANTIES AND THAT THERE IS NO IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE; AND NO IMPLIED WARRANTY, WHICH EXTENDS BEYOND THE DESCRIPTION OF THE QUIPMENT. SELLER SHALL NOT BE RESPONSIBLE FOR ANY INDIRECT OR CONSEQUENTIAL DAMAGES OF THIS BUYER IN CONNECTION HEREWITH, SUCH AS LOSS OF PRODUCTION, LOSS OF ANTICIPATED SAVINGS OR ANTICPATED PROFITS, OR DAMAGES OF ANY THIRD PARTY ASSERTED AGAINST THE BUYER. THE SELLER SHALL IN NO EVENT

AND FOR NO CAUSE WHATSOEVER, INCLUDING ANY BREACH OR DEFAULT BY THE SELLER IS RESPONSIBLE FOR DAMAGES OF THE PERTINENT ITEM OR ITEMS OF EQUIPMENT.

## ARTICLE X
## INSTALLATION AND ACCEPTANCE

Machine will be installed and tested per the Seller's installation and testing standards and Buyer agrees to same. Upon completion of installation and testing the machine shall be deemed accepted by Buyer, or upon Buyer's use of the equipment for production, whichever comes first. Upon acceptance, warranty period shall begin.

## ARTICLE XI
## DELEGATION AND ASSIGNMENT

Buyer shall not delegate or assign any duties or claims under the sales order without the Seller's prior written consent. Any such delegation or assignment attempted without the previous written consent of the Seller shall effect, at the option of the Seller, a cancellation of all of the Seller's obligations hereunder.

## ARTICLE XII
## PERFORMANCE DATA

Performance and production data, including accuracy, capacity and capability of machines are the Seller's best estimates only and are not guaranteed since they are dependent upon varying future production factors and conditions not within the Seller's control.

## ARTICLE XIII
## LIMITATION OF LIABILITY

In no event shall Seller be liable for any special, indirect or consequential damages. Further, in no event shall Seller be liable for any damages or other amounts for any reason whatsoever in excess of the purchase price of the equipment set forth in this proposal.

## ARTICLE XIV
## PATENT INDEMNITY

Seller agrees to hold Buyer harmless against any claim of infringement of any United States apparatus claim of said patent, provided Seller is immediately notified in writing upon receipt by Buyer of such claim, and Seller is allowed to make changes in the equipment for the purpose of avoiding infringement, it being agreed that the obligation above set out is the only obligation of Seller with respect to any claim of patent infringement.

## ARTICLE XV
## PROPRIETARY INFORMATION

The information and material contained in this proposal is proprietary and is submitted in confidence with the condition that it will not be copied or otherwise reproduced and will not be used or disclosed to anyone outside Buyer's company except as authorized in writing by Seller.